IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

BILLY A. LUCERO,

       Plaintiff,

v.                                    No. CIV 04-1202 BB/LFG

WW2,LLC;
WW HOLDING CO.; and
WALTER WICK,

       Defendants.


MEMORANDUM OPINION
GRANTING MOTION TO DISMISS


THIS MATTER is before the Court on Defendants' Motion to Dismiss for lack

of subject matter jurisdiction and lack of personal jurisdiction. (Doc. No.  7,

"Motion.")  The Court has reviewed the submissions of the parties and the relevant

law, and entertained oral argument.  For reasons set forth below, the Court finds

Defendants' Motion should be GRANTED.

BACKGROUND

Plaintiff Lucero is a New Mexico resident.  (Complaint ¶ 2.) In the latter half

of 2003, he entered into negotiations that eventually led to him signing an agreement

with WW Holdings, LLC to form a limited liability company called WW2, LLC[1]

("WW2"). (Motion Ex. A.) The members of that LLC are WW Holdings LLC and

Lucero.  (Id.) Lucero signed an employment contract with WW2, LLC on the same

day.[2] That agreement provided that Lucero was employed on an "at will" basis and

that it represented the entire agreement between the parties. (Motion Ex. A at § 5.1,

§ 7.5.) On June 23, 2004, Lucero received a termination letter from Wick and WW2

stating that his employment was terminated.  (Complaint ¶ 18.)

On October 20, 2004, Lucero filed this action alleging diversity jurisdiction

pursuant to 28 U.S.C. § 1332. Defendants have filed a Motion to Dismiss under Fed.

R. Civ. P. 12(b)(1) (subject matter jurisdiction) and (b)(2) (personal jurisdiction). On

April 1, 2005, the Court held a hearing.  The Notice for that hearing raised several

issues.  (Doc. 24.) Based on oral argument, the Court invited Plaintiff to provide

further briefing with regard to the issue of an at will employment contract, future

---

[1]At the evidentiary hearing on April 1, 2005, Defendants' counsel asserted that WW2 was formed on October 13, 2003; however, the Agreement Defendants' counsel provided to the Court is dated March 18, 2004.

[2]The Contract is dated March 18, 2003. (Motion Ex. B.) However, Plaintiff's complaint states that the initial negotiations did not begin until late summer and early fall 2003, an initial employment contract was signed in November 2003, and that the initial agreement was later replaced by one signed "March 18, 2003."  (Complaint at ¶ 10.) Given the sequence and dates, the Court will conclude that the final employment agreement was actually signed March 18, 2004 rather than 2003.

damages and whether the amount in controversy would be met.  Plaintiff asked for

two weeks to provide that information but no further filings have been received.

### DISCUSSION

In order for a federal court to have diversity jurisdiction, there must be

complete diversity between the parties, i.e., no plaintiff and no defendant can citizens

of the same state.  Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 388

(1998).  The presence of even one non-diverse party automatically destroys federal

jurisdiction.  Id. at 389.

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) may take two forms: a facial

attack or a factual challenge.  Holt v. United States, 46 F.3d 1000, 1002 (10th Cir.

1995).  A facial attack questions the sufficiency of the complaint while a factual

challenge contests the facts on which jurisdiction depends.  Id. at 1002-03.  The

burden of proving subject matter jurisdiction is on the party asserting jurisdiction.

U.S. ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 n.5

(10th Cir. 1999). Jurisdiction must be proven by a preponderance of the evidence.[3]

Id.  Since federal courts are courts of limited jurisdiction, there is a presumption

against jurisdiction.  Penteco Corp. Ltd. P'ship--1985A v. Union Gas System, Inc.,

929 F.2d 1519, 1521 (1991).

---

[3]Plaintiff has argued that he is only required to make a prima facie showing of jurisdiction. (See Pltfs. Resp. at 2, citing Kuenzle v. HTM Sports-Und Freizeitgerate AG, 102 F.3d 453, 455 (10th Cir. 1996) and Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc., 45 F.Supp.2d 1255, 1257 (D.N.M. 1999).) However, these cases deal with personal jurisdiction, not subject matter jurisdiction.

When considering a factual challenge, a court may not presume the truthfulness of Plaintiff's allegations. Holt, 46 F.3d at 1003.  Instead a court has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed facts. Id. In such instances, the court's consideration of material outside the pleadings does not convert the motion to a Rule 56 motion.  Wheeler v. Hurdman, 825 F.2d 257, 259 n. 5 (10th Cir. 1987).

In this case, Defendants did not merely mount a facial challenge questioning the adequacy of the complaint; Defendants provided evidence consisting of affidavits and copies of the relevant agreements to dispute the jurisdictional facts of the Complaint.  (Motion Ex. A & B; Reply.)  Thus, this is a factual challenge,  Holt, 46 F.3d at 1002, and Plaintiff has the burden of proving subject matter jurisdiction by a preponderance, Hafter, 190 F.3d at 1160 n. 5.

Complete Diversity--Is Lucero Still a Member of WW2?

An LLC is treated as a partnership for purposes of determining whether there is diversity, i.e., it is a citizen of all states where it has members. Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998).[4]  As a result, it is difficult, if not

---

[4]The Court has found no 10th Circuit appellate opinions on this question.  Four 10th Circuit district court opinions conclude that LLCs should be treated like partnerships for diversity purposes.  Bower v. Stein Ericksen Lodge Owners' Ass'n, Inc., 2000 WL 33710908 (D. Utah); Hale v. MasterSoft Intern. Pty. Ltd., 93 F.Supp.2d 1108, 1112 (D. Colo. 2000); Tilzer v. Davis, Bethune & Jones, LLC and Davis, 2004 WL 825289 (D. Kan.); Birdsong v. Westglen Endoscopy Center, L.L.C., 176 F.Supp.2d 1245, 1248 (D. Kan. 2001).  The rationale for this conclusion is implied from a Supreme Court case about diversity jurisdiction for limited partnerships, Carden v. Arkoma Assoc., 494 U.S. 185, 187-197 (1990) in which the Court concluded that broadening diversity jurisdiction is for Congress, not the courts.

impossible, for a member to maintain a diversity action against his own LLC because he cannot establish complete diversity. Carter G. Bishop & Daniel S. Kleinberger, Diversity Jurisdiction for LLCs? Basically Forget About It, 14-Oct. Bus. L. Today 31 (2004).

Defendants dispute whether there is complete diversity.  In Defendants' view, Lucero remains a member of WW2; thus, Lucero could not possibly be diverse from WW2 because Lucero's membership makes WW2 a citizen of New Mexico like Lucero. Plaintiff does not deny that an LLC is a citizen of every state where it has members, but contends that the termination of his employment also terminated his membership in WW2.  Because he is no longer a member, there is complete diversity.

Plaintiff cites the Employment Agreement, §§ 9.2(d) and (e) to support his argument that the termination of his employment also terminated his membership in WW2.  However, the Employment Agreement does not say that Lucero ceases to be a WW2 member upon termination; instead, it contains a mandatory provision dictating how Lucero's "Membership Interest" will be valued and bought out by WW Holdings if Lucero is terminated.

On the other hand, Defendants have offered a declaration by Walter Wick, a director of WW2 and WW Holdings stating that Lucero continues to hold his "Membership Interest" and that he continues to be a "Member." (Wick Suppl. Dec.

**at ¶ 2-4.) The Court has read the entire LLC Agreement and finds that it could be**

**read to support either view.**

**Section 5.3 of the Agreement provides that the Manager, WW Holdings, can**

**authorize a company officer to execute paperwork relating to termination or**

**withdrawal of a Member:**

> **...the Manager may, without the approval of the Requisite**
> **Members, amend any provision of this Agreement or the Certificate of**
> **Formation, and authorize an appropriate officer of the Company to**
> **execute, swear to, acknowledge and record all documents required or**
> **desirable in connection therewith, solely to reflect the following:  (1) The**
> **admission, substitution, termination or withdrawal of a Member in**
> **accordance with this Agreement. ...**

**Limited Liability Company Agreement of WW2, LLC, Dfdt.'s Ex. A.**

**If the Manager, WW Holdings,  has this authority, and Walter Wick, in his**

**Declaration as director of WW Holdings says that he, in effect, hasn't exercised it,**

**then it would seem that Lucero is still a Member.**

**Similarly, Section 7.1(a) obligates the Manager to maintain a list of current**

**Members. Wick's declaration that Lucero continues to be a Member would seem**

**persuasive because Wick is the director of WW Holdings, the Manager of WW2, and**

**it is his responsibility to know who is a Member so that he can maintain the list.**

**(Wick Suppl. Dec. ¶ 3.)  Thus, these sections of the Agreement support Defendants'**

**contentions.**

Other sections lead to a different conclusion; i.e., that Lucero may still have a *Membership Interest*, but may no longer be a *Member*. Section 8.2c describes "death, retirement, resignation, expulsion, Bankruptcy or dissolution of any Member *or any other event* which terminates the continued membership of a Member in the Company... ." [Emphasis added.] Section 9.2(b) then provides that, in the case of Bankruptcy, the Membership Interest vests in the trustee of the estate. This language shows that an actual Membership can automatically terminate under certain circumstances although the Membership Interest persists. Importantly, termination is similar to retirement or resignation in that employment ceases, so termination might be one of those "other event[s]" that terminate Membership.

Similarly, Section 9.1 addresses Assignment of Membership Interests and provides that an assignee who owns a Membership Interest does not have the powers of a Member until he becomes a "substituted Member." Again, the Agreement envisions non-Members owning Membership Interests. Moreover, section 9.2(d), which addresses termination of Plaintiff's employment, refers only to buying out his Membership *Interest,* not to terminating his *Membership.* Because the Agreement fails to address what happens to his Membership but does address the disposition of his Membership Interest, a reasonable inference might be that he is no longer a Member. Thus, some sections of the Agreement support Plaintiff's contentions that there is complete diversity.

*The Delaware Limited Liability Company Act*

The disputed LLC Agreement states that it shall be governed by and construed in accordance with the laws of the State of Delaware. (Motion Ex. A § 11.10.) The Court therefore turned to the Delaware Limited Liability Company Act (the "Act") to determine whether that Act had a default provision that might resolve this issue.[5] Del. Code Ann., tit. 6, §§ 18-101--1109.

The Act provides certain gap filling provisions although these are not directly on point. One section provides that a member ceases to be a member upon assignment. Id. at § 18-702(b)(3). An assignee does not become a member until other members approve. Id. at § 18-702(a)(1). Membership does not begin until admission is reflected in the books of the LLC. Id. at §18-301(a)(2), (b)(1) & (b)(2). Thus, the Act envisions that, absent contrary language, becoming a member or ceasing to be a member requires formal, express acts directly impinging upon membership. Id. at §§ 18-702(b)(3) (assignment), 18-702(a)(1) (assignee becoming a member), and 18-301 (becoming a member). By analogy, these provisions suggest that membership ceases only upon a formal, affirmative act. Whether Lucero or WW Holding had to initiate

---

[5]Under Delaware Law, the policy is to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements. Del. Code Ann., tit. 6, § 18-1101. Generally, the Act provides that the LLC agreement controls and the provisions of the Act only apply if the agreement does not provide an alternative. To illustrate, a member may resign only pursuant to the procedures set out in the agreement but if the agreement is silent, the member may not resign prior to dissolution and winding up, Del. Code Ann., tit. 6, § 18-603; LLC interests are assignable except as otherwise provided in the agreement, Del. Code Ann., tit. 6, § 18-702; upon resignation a member is entitled to receive whatever distribution the agreement provides but if the agreement is silent, the member is entitled to the fair value of their interest within a reasonable time, Del. Code Ann., tit. 6, § 18-604.

that act is immaterial for the purposes of this motion. No such act has taken place; the termination of Lucero's employment was not an implicit termination of his membership.

Although this is a close case, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that he is no longer a member of WW2. The consequence of that finding is that complete diversity is lacking because Plaintiff and WW2 are citizens of the same state. The Court will grant Defendants' motion to dismiss this case. Schacht, 524 U.S. at 389.

Amount in Controversy

Even if the Court were to conclude that there was complete diversity, the Court also concludes that this case fails to meet the amount in controversy requirement of more than $75,000. Here, Plaintiff alleged that the amount in controversy was met. (Complaint at ¶ 6.) Defendants only raised this issue in a footnote to their motion. (Dfdts. Motion at 6 n. 2, reserving amount in controversy issue.) Rather than litigate jurisdiction issues piecemeal, the Court expressly requested that the parties be prepared to address the amount in controversy issue at the hearing on Defendants' motion. (Notice, Doc. 24.) At the hearing, Defendants alleged that the amount in controversy was not satisfied. Plaintiff's counsel said that he was not prepared to argue that point at the hearing but could brief the Court within two weeks. No further information was received.

As explained above, once the factual allegations of the complaint are disputed, a court may not presume the truthfulness of those allegations.  <u>Holt</u>, 46 F.3d at 1002-03. However, the standard of review for meeting the amount in controversy is different than that for establishing citizenship.  The plaintiff must merely show that it does not appear to a legal certainty that he cannot recover the jurisdictional amount. <u>Woodmen of World Life Ins. Society v. Manganaro</u>, 342 F.3d 1213, 1216 (10th Cir. 2003). The legal certainty standard is very strict and there is a strong presumption favoring the amount pled by the plaintiff. <u>Id.</u> Generally, dismissal under this standard is only appropriate when a contract limits the potential recovery, when the law limits the amount recoverable, or there has been an obvious abuse of federal court jurisdiction.  14B Charles Alan Wright, <u>et al.</u>, Federal Practice and Procedure § 3702 at 98-101 (3d ed. 1998).

Here, there are severe contractual limits on Plaintiff's recovery.  His employment contract provides that he is an "at will" employee.  (Motion Ex. B at § 5.1.)  The agreement provides further that in the event of termination, he is entitled to four weeks notice.  (<u>Id.</u> at § 5.2(a).) His compensation for four weeks would be $4,615.38. (Motion Ex. A at § 4.1(a).) The Agreement provides that it is the entire agreement between the parties, (<u>id.</u> at § 7.5), and provides that any modification must be in writing, (<u>id.</u> at § 7.6). Thus, it is likely that Plaintiff could recover no more than $5,000 for Count I.

The law also limits Plaintiff's recovery for Counts II through IV.  In New Mexico, either the employee or the employer may terminate an at will employment relationship at any time with no liability. Sanchez v. The New Mexican, 738 P.2d 1321, 1323-24 (N.M. 1987).  New Mexico does not recognize an implied covenant of good faith or fair dealing if, as here, there is an express integrated contract providing that employment is terminable at will. Melnick v. State Farm Mutual Auto. Ins. Co., 749 P.2d 1105, 1109-11 (N.M. 1988) (reasoning that it would be unjust to permit a party who has agreed to a contract to later impose new conditions for which he could have but did not negotiate).  While New Mexico recognizes that an at will employment relationship may be modified by an implied contract, Hartbarger v. Frank Paxton Co., 857 P.2d 776, 780 (N.M. 1993), the employment agreement here requires any such modifications to be in writing; no such modifications have been brought to the Court's attention. Thus, it is difficult, if not impossible, to see how Plaintiff would recover for the breach of an implied contract in Count II and for oral misrepresentations in Counts III and IV.

In view of these contractual and legal limitations to Plaintiff's damages, the Court expressly requested information in its notice of hearing about whether the amount in controversy was met. At the hearing, the Court again requested argument relating to the issue of damages when an at will employee has executed an express integrated contract limiting his damages.  Despite the Court's invitations, Plaintiff

has provided nothing further.  Thus, the Court concludes that Plaintiff failed to carry his burden of showing that it does not appear to a legal certainty that he cannot recover the jurisdictional amount. <u>Woodmen</u>, 342 F.3d at 1216. Even if there were complete diversity, the Court would dismiss this case because the amount in controversy requirement is not met due to both contractual and legal limitations on Plaintiff's recovery. 28 U.S.C. § 1332(a); 14B Charles Alan Wright, <u>et al.</u>, Federal Practice and Procedure § 3702 at 98-101 (3d ed. 1998).

The remaining issues are moot.

Dated this 29th day of April, 2005.

BRUCE D. BLACK
United States District Judge


For Plaintiff:
Michael E. Mozes
5732 Osuna N.E.
Albuquerque, NM  87109

For Defendant:
Harvey Fruman
Cozen O'Connor
501 West Broadway, Suite 1610
San Diego, CA  92101